IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 3:10 CR 435

   -vs-

                                        MEMORANDUM OPINION
                                        AND ORDER

JASON JAHNS
PAUL JENKINS,

                Defendant.

KATZ, J.

This matter is before the Court on the Sentencing Memoranda of Defendants Paul Jenkins (Doc. Nos. 42, 56, 59, and 75), Jason Jahns (Doc. Nos. 38, 55, 64, and 74) and the United States (Doc. Nos. 43, 65, and 76).  The Court also conducted hearings on November 21, 2011 (Doc. No. 72), and December 7, 2011 (Doc. No. 73).  As this matter is ripe for disposition, the Court makes the following determination.

### BRIEF BACKGROUND

Paul Jenkins and Jason Jahns were each charged with being a felon in possession.  Each pleaded guilty, without an agreement, to one count of 18 U.S.C. § 922(g)(1).  The Presentence Report for each of the Defendants recommends the statutory penalty for the offense at a mandatory minimum of 15 years to life under 18 U.S.C. §924(e)(1), while the Armed Career Criminal Act ("ACCA"), and the Advisory Guideline range under U.S.S.G. §2K2.1 is at 292 to 365 months imprisonment.  Each Defendant objects to the 15 year mandatory minimum sentence as well as aspects of the calculations of the sentencing guidelines.

Specifically, both Defendants contend that their two felony convictions in Kentucky do not qualify for consideration under the ACCA.  Defendant Jenkins challenges the application of his

felony convictions from Tennessee and Ohio to the ACCA calculation.  Defendant Johns challenges the constitutional vagueness of the ACCA.  Finally, both Defendants contend their Kentucky burglary convictions were obtained in violation of their Sixth Amendment rights.  The Court addresses each of these arguments *in seriatim*.

## DISCUSSION

1. *Whether the Kentucky burglary convictions were obtained in violation of the Defendants' Sixth Amendment Rights*

Both defendants challenge the validity of their Kentucky convictions on the basis they were jointly represented by the same set of counsel in multiple subsequent cases.  They allege a conflict of interest between those two attorneys as both were affiliated by marriage and in the same law office.  Moreover, the defendants assert an added conflict as one of these two attorneys also represented a third co-defendant in Kentucky arising out of the same incident.  It is these dual and successive representations which defendants contend rise to a violation of their Sixth Amendment right and disqualify those (Kentucky) convictions as predicate acts under the ACCA.

A prior conviction used to enhance a sentence under the ACCA may not be collaterally[1] challenged in a federal sentencing except for those convictions obtained in complete[2] violation of

---

[1] In a collateral attack, the government bears the initial burden of establishing the existence of the prior conviction.  *United States v. Aloi*, 9 F.3d 438, 442 (6th Cir. 1993).  The burden then shifts to the defendant to demonstrate the conviction to be constitutionally infirm.  *Id*.  To do so, a defendant must state with specificity the grounds claimed, the anticipated means of proving the grounds, and an estimate of the process and time needed to obtain the required evidence.  *United States v. McGlocklin*, 8 F.3d 1037, 1045 (6th Cir. 2004); *United States v. Aloi*, 9 F.3d at 442.

[2] A number of courts have denied a collateral attack where the allegation centered on an ineffective assistance of counsel claim as to a sentence subject to the ACCA.  *See e.g. United States v.*

the Sixth Amendment right to appointed counsel. *Custis v. United States* 511 U.S. 485, 496 (1994). *Accord*, *United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995) (extending and applying enhancements under sentencing guidelines).

Assuming *arguendo*, a conflict of interest argument is viable, in the absence of an objection or a waiver, to establish a Sixth Amendment violation there must be demonstration of an actual conflict of interest which adversely affected the lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). This Circuit recently addressed what was required to show a conflict of interest regardless of whether the facts demonstrated multiple concurrent representation or successive representation. *Jaloweic v. Bradshaw*, 657 F.3d 293, 317 (6th Cir. Sept. 7, 2011). Specifically, the Court noted:

> Rather, "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id*.[*Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002).] Thus even though the *Moss* court held that counsel's successive representation of the co-defendants triggered application of the *Sullivan* standard, it did not simply hold that *Strickland* prejudice was presumed. The Court went on to ascertain whether an "actual conflict" *and* "adverse effect" had been shown. *See Moss*, 323 at 463-70.
> To meet this standard, the petitioner had to show that "counsel was influenced in his basic strategic decisions by the interests of the former client." *Moss*, 323 F.3d at 466. . . . That is, the petitioner had to show that his attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Id*. Because this standard was not met in *Moss*, the *Sullivan* presumption of prejudice was not applied after all.

*Id*. (Quotations omitted.)

---

*Clemons*, 38 F.3d 1217, 1994 WL 589649 *2 (6th Cir. 1994)(unpublished), *cert. denied*, 513 U.S. 1197 (1995); *United States v. Sharpley*, 399 U.S. 123, 126 (2nd Cir. 2005); *United States v. Borquez*, 297 Fed. Appx. 618 (9th Cir. 2008); *United States v. Neller*, 220 F.3d 1154, 2000 WL 1234330 * 6 (6th Cir. 2000); *United States v. Caldwell*, 210 F.3d 373 , 2000 WL 331950 *8-11 (6th Cir. 2000).

In this instance, Jenkins and Jahns take issue with the dual representation by Carolyn Clark-Cox and James Cox, both of whom are with the Office of Public Advocacy. In addition to dual representation issues, defendants contend that Clark-Cox also represented another co-defendant (to the Kentucky charge), one LaChrisa Adams and the docket from that case indicates that Clark-Cox did represent Adams at her arraignment. The Court conducted two hearings and heard testimony from both lawyers and the Defendants on this issue. Having considered the memoranda filed along with the testimony from those two hearings, the Court finds Defendants' arguments not well taken.

First, waivers were signed by the Defendants in each of the dual or concurrent representation situations and the Kentucky court documents presented confirm this fact.

1. <u>McCreary County 04 cr 127</u>

There is documentation showing signed, written waivers of dual representation by Jenkins and Jahns dated February 8, 2005. (Doc. No. 59-1, Exh. A, ECF p. 211(Jenkins) and 320 (Jahns, albeit spelled as Jones).

On December 7, 2004, Adams was contemporaneously arraigned and subject to a pretrial conference at which time she was represented by Clark-Cox. The pretrial conference order of December 7, 2004 indicates a further status on February 8, 2005. However, Adams' representation was subsequently undertaken by attorney Bruce Lominac. The documentation shows that on January 27, 2005, the court entered an order providing for Adams' transport to this status with distribution of that order going to defense counsel Lominac and not Clark-Cox. (Doc. No. 59-1, Exh. A, ECF p. 296-297.) Lominac also signed as counsel for Adams on February 8,

4

2005, the date she entered her plea. Therefore, the evidence supports that Adams had new counsel prior to the date she entered her plea in February 2005.

The documents do show that Clark-Cox subsequently represented Adams for probation violations from October 2007 and as recently as October 2010.

2. McCreary County 05 cr 20

On April 25, 2005, Adams was arraigned on this charge with Clark-Cox as her counsel. (Doc. No. 59-2, ECF p. 403-404.) On May 13, 2005, Bruce Lominac entered an appearance due to a conflict of appearance by the Department of Public Advocacy (Clark-Cox's employer). (Doc. No. 59-2, ECF p. 400.)

On August 2, 2005, both Defendants appeared in court and executed waivers of dual or multiple representation. (Doc. No. 59-2, ECF p. 358 and 426.)

3. Pulaski County 06 cr 159/160

Defendant Jenkins appeared before the court for his arraignment on July 3, 2006, and was represented by DPA attorney Jim Cox. (Doc. No. 59-3, ECF p. 461.) On October 16, 2006, Jenkins executed a waiver of dual or multiple representation. (Doc. No. 59-3, ECF p. 453.)

Defendant Jahns also appeared before the court for his arraignment on July 3, 2006, and was represented by DPA attorney Jim Cox. (Doc. No. 59-3, ECF p. 517.). Like Jenkins, Jahns also executed a waiver of dual or multiple representation on October 16, 2006. (Doc. No. 59-3, ECF p. 509.)

On February 29, 2006, Adams was arraigned and was represented by the Department of Public Advocacy and attorney Jim Cox. (Doc. No. 59-3, ECF p. 499.) Thereafter, she requested appointment of counsel due to indigency (Doc. No. 59-3, ECF p. 494-495.) On June 5, 2008,

5

Adams new counsel, Tim Despotes, file a motion on her behalf to resolve the pending charges. (Doc. No. 59-3, ECF p. 492.)

Second, the testimony of Carolyn Clark-Cox and James Cox corroborated the factual record and did not demonstrate an adverse effect by the dual representation. As the Defendants failed to demonstrate that the conflict of interest affected the adequacy of their representation, this objection is without merit.

2. *Whether the Defendants' prior convictions qualify as predicate offenses under the Armed Career Criminal Act ("ACCA").*

    A. The Kentucky Felonies

Both Defendants have two convictions for 2nd degree felony in Kentucky. They both contend that these convictions cannot be used as predicate offense for purposes of the ACCA. Jenkins[3] arguments focus on a complicity argument, i.e, that when someone is charged with an offense which is effectively a complicity charge, based upon their lessened culpability, the offender's role in a multiple person event lessens his role as a principal. Jahns adopts Jenkins' arguments and submits that these convictions do not qualify as violent felonies.

The ACCA requires a fifteen year minimum sentence for a defendant convicted under 18 U.S.C. § 922(g), when the defendant has three or more prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The government bears the burden of proof on

---

[3] In Jenkins' Sentencing Memorandum he incorrectly characterizes one of the challenged convictions as burglary in the first degree (Case No. 06 CR 160), when he was actually sentenced for burglary in the second degree on October 16, 2006. (Doc. No. 42 at p. 3.) This conviction is accurately stated in Jenkins' Reply brief (Doc. No. 56).

whether the convictions qualify as predicates under the ACCA. *United States v. Hargrove*, 416 F.3d 484, 494 (6th Cir. 2005).

The Supreme Court in *Sykes v. United States*, 131 S.Ct. 2267 (June 9, 2011), reiterated how to determine whether an offense is a violent felony:

> "we employ the categorical approach. . . Under this approach, we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James,* 550 U.S. at 202, [127 S.Ct. 1586] (internal quotation marks and citation omitted); see also *Taylor v. United States*, 495 U.S. 575, 599-602 (1990). (Emphasis in original.)

The Sixth Circuit characterized the analysis in this way:

> "In determining whether a particular offense qualifies as a violent felony, courts must use the "categorical approach." That is, they must not consider the individual facts and circumstances of the offense, but rather must look to the statutory terms of the alleged felony. . . . If, however, the statutory definition is ambiguous–it covers some actions that would constitute non-violent felonies and other actions that would not constitute violent felonies–the court may expand its inquiry beyond the statute's text. In such cases, the court may additionally consider the "charging document, written plea agreement, transcript of plea colloquy , and any explicit factual finding by the trial judge to which the defendant assented" to see if they "necessarily" establish the nature of the prior offense."

*United States v. Vanhook*, 640 F.3d 706, 709 (6th Cir. April 18, 2011).

Only after the Court concludes the offense is not a violent felony, following a categorical approach, may a court expand beyond the statute's text. *See United States v. McMurray*, 653 F.3d 367, 377 (6th Cir. August 4, 2011).

A "violent felony," per Section 924(e)(2)(B), is defined as any crime punishable by imprisonment of more than one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another;" or "(ii) is burglary, arson, or

7

extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B).

The analysis first considers whether it is a crime punishable for more than one year that "(i) has as an element the use, attempted use, or threatened use of force against the person of another." There is no dispute that second degree burglary is punishable for a term in excess of a year and does not have an element regarding use of force.

Under 18 U.S.C. § 924(e)(2)(B)(ii), burglary is among the specific offenses named therein. However, the analysis then turns to whether the offense constitutes a violent felony. In making this assessment, the Court takes a categorical approach and must only look to the statutory terms of the alleged felony. *Sykes*, *supra*.

Kentucky's Penal Code defines burglary in the second degree as:

> (1) A person is guilty of burglary in the second degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a dwelling.

Ky. Rev. Stat. Ann. § 511.030 (West 2011).

The consideration in a categorical approach is whether the crime presents a serious potential risk of physical injury to another. *Sykes*, 131 S.Ct. at 2273. "For instance, a crime involves the requisite risk when 'the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses.' " *Id*. (quotations omitted).

The *Sykes* Court noted that "[b]urglary is dangerous because it can end in confrontation leading to violence." *Id*. citing *James v. United States*, 550 U.S. 192, 200 (2007). Kentucky's statutory framework also defines a dwelling as "a building which is usually occupied by a person lodging therein." § 511.010. Knowingly entering a dwelling with the intent to commit a crime poses a serious danger to the occupants. As statutorily defined, second degree burglary under

8

Kentucky law is similar in risk to the enumerated crimes and under the statutory framework, "otherwise involves conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B)(ii). *See also United States v. Gaddie*, 51 Fed. Appx. 150, 152-153 (6th Cir. 2002) (finding a conviction for second degree burglary in Kentucky as qualifying as a crime of violence). Therefore, it qualifies as a violent felony for purposes of the ACCA.

    B. <u>The Tennessee and Ohio felonies</u>.

Even assuming the Kentucky burglaries do not qualify as violent felonies for ACCA purposes, the government contends and Jenkins disputes that convictions for a Tennessee burglary, a subsequent felony escape from jail and a conviction from Wood County on a third-degree burglary Ohio charge otherwise meet the requirements under the ACCA.

Regarding the Wood County third-degree burglary conviction, Jenkins argues it should not qualify as a generic-burglary and therefore be disqualified from the ACCA calculation. Jenkins' points to Judge Wells' determination on this issue in *United States v. Cottrell*, Case No. 1:09 CR 495 (N.D. Ohio, July 13, 2010), which is currently on appeal before the Sixth Circuit. However, this past August, the Sixth Circuit affirmed a determination by Judge O'Malley that a defendant's convictions for third-degree burglary under Ohio's statute *did* constitute violent felonies under the ACC. *United States v. Coleman*, 655 F.3d 480, 481-485 (6th Cir. 2011). This Court is bound to follow that precedent.

However, the government's arguments regarding the conviction for a felony escape from a Tennessee county jail are more problematic. That is because Tennessee's escape statute[4] defines

---

[4] At the time of this conviction, Tennessee's escape statute read as follows:

(a) It is unlawful for any person arrested for, charged with, or convicted of an offense to escape

9

escape as an "unauthorized departure from custody or failure to return to custody following temporary leave for a specific purpose or limited period, but does not include a violation of conditions of probation or parole." Tenn. Code Ann. § 39-16-601. All that is before the Court is the conviction for felony escape and the sentence imposed. As noted by the Sixth Circuit in a similar case, "factual information contained in a PSR may not be considered in determining the nature of a defendant's prior conviction." *United States v. Anglin*, 601 F.3d 523, 529 (6th Cir. 2010). The government bears the burden of proving an escape conviction is a crime of violence. *Id.* As the record before the Court is insufficient to deem this Tennessee felony escape conviction as a crime of violence under the ACCA, it is disregarded for purposes of this discussion.

However, as the Court has determined that the Kentucky burglary felonies do qualify as crimes of violence, they are sufficient to render both Jenkins and Jahns, subject to the ACCA on this basis.

3. *Unconstitutional Vagueness of the ACCA*

Finally, Defendant Jahns submits that the residual clause of the ACCA, specifically the language addressing crimes that "otherwise involves conduct" and conflicting judicial interpretations, render the provision unconstitutionally vague. The support cited by Jahns is in the form of Supreme Court dissents. The district court is bound by precedent of the Sixth Circuit and the United States Supreme Court. Dissenting Supreme Court opinions are not binding precedent.

---

from a penal institution, as defined in § 39-16-601.

(b) A Violation of this section is:
    (1) A Class A misdemeanor if the person was being held for a misdemeanor; and
    (2) A Class E felony if the person was being held for a felony.

Tenn. Code Ann. § 39-16-605

*See Purcell v. Bank Atlantic Financial Corp.*, 85 F.3d 1508, 1513 (11th Cir.) *cert. denied sub nom, American Broadcasting Co. Inc. v. Bank Atlantic Financial Corp.,* 519 U.S. 867 (1996). Therefore, Jahns' vagueness arguments are not well taken.

4. *Remaining Objections*

    A.  PSR ¶ 19 Base Offense Level

Both Defendants challenge their base level and argue it should be lower due to the erroneous consideration of their Kentucky convictions. However, based on the above discussion, Defendants' objections are without merit.

    B.  PSR ¶ 20 Specific Offense Characteristics

Both Defendants object to an enhancement for eight or more firearms as error. They contend the ATF only recovered seven firearms from them.

The Sixth Circuit has stated that "uncharged conduct may be considered in determining specific offense characteristics. . . when such conduct is "'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Freeman*, 640 F.3d 180, 189 (6th Cir. 2011), citing U.S.S.G. § 1G1.3(a)(2). In this case, Special Agent Miller testified that he purchased nine firearms from the Defendants. The PSRs indicate firearms were stolen from a burglary involving Jenkins, Jahns and another individual. Jenkins and Jahns also participated in selling these firearms to the undercover Special Agent. When considering the PSR and the testimony of Special Agent Miller, the Court finds the uncharged conduct may be considered and justifies the enhancement of U.S.S.G. § 2K2.1 (b)(1)(A).

    C.  PSR ¶ 22 Specific Offense Characteristics- Trafficking

11

Both Defendants object to the four level enhancement for trafficking in firearms. They submit each had no reason to believe Special Agent Miller's possession or receipt of the firearms would be unlawful. The circumstances and account of the sales which occurred over several weeks involved multiple meetings with Jenkins and Jahns, either separately or together. Moreover, Special Agent Miller's testimony supports the notion that both Defendants were selling stolen weapons. Accordingly, the record before the Court justifies application of U.S.S.G. § 2K2.1 (b)(5).

D. <u>PSR ¶ 23 Specific Offense Characteristic-Firearms Possessed in Connection with Another Felony</u> (Defendant Jahns only)

Defendant Jahns objects to a four level enhancement on the basis neither he nor his co-defendants were convicted of a felony offense such as burglary relating to these firearms at issue. As correctly noted by the government, a court may consider uncharged conduct for sentencing purposes. *United States v. Haj-Hamed*, 549 F.3d 1020, 1026 (6th Cir. 2008). "'The government bears the burden of establishing factors supporting [a sentencing] enhancement by a preponderance of the evidence.'" *United States v. Shields*, 664 F.3d 1040, 1043 (6th Cir. 2011) (quotation omitted).

In this instance Jahns admitted to the burglary (PSR ¶ 6) which no one disputes is a felony. Accordingly, the four level increase is justified.

## CONCLUSION

Based on the foregoing, the objections of the Defendants are denied.

IT IS SO ORDERED.

                                                   s/ *David A. Katz*
                                                  DAVID A. KATZ

                                                        U. S. DISTRICT JUDGE